UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHARMAINE COOKE,                                   :
                                                   :          24-CV-536 (PAE) (RWL)
                          Plaintiff,               :
                                                   :
          - against -                              :     **REPORT & RECOMMENDATION TO**
                                                   :       **HON. PAUL A. ENGELMAYER:**
CONSOLIDATED EDISON COMPANY OF                     :     <u>**MOTION TO DISMISS (Dkt. 95)**</u>
NEW YORK, INC.,                                    :
                                                   :
                          Defendant.               :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

On January 2, 2024, Charmaine Cooke, proceeding pro se, filed this employment discrimination case against Consolidated Edison Company of New York, Inc. ("ConEd"). Cooke asserts claims under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  Cooke alleges that ConEd failed to provide her with reasonable accommodations and fired her because of her disability.  ConEd has moved to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  ConEd argues that Cooke was terminated because of "chronic absenteeism" that left her unable to perform essential job functions, and because Cooke failed to follow the company's sick-time procedures.  Additionally, ConEd argues that the majority of Cooke's claims are time-barred.  For the reasons set forth below, ConEd's motion should be GRANTED in part and DENIED in part.

**Factual Background**[1]

ConEd hired Cooke as a Company Senior Secretary/Executive Assistant on October 18, 2010.  (AC at ECF 62.)  During her first six years at ConEd, Cooke was recognized for her customer service and featured in positive internal company write-ups.  (AC ¶¶ 2-3.)  In 2016, Cooke applied for, and was offered, a promotion to Analyst.  (AC ¶ 4.)  Between 2016 and 2018, however, Cooke experienced new "work environment stressor[s]" she attributed to her manager, Michael Gibbons, who (i) compared Cooke's work to another employee "in a negative light," (ii) "undermined [Cooke's] work publicly in a team meeting," (iii) "discontinue[d] … her attendance to [ConEd's] mentorship programs [and Cooke's] participation in [an] annual awards program," (iv) "instructed her to inappropriately log her timesheet incorrectly," and (v) disallowed Cooke "to showcase and list all her accomplishments" during her annual performance review.  (AC ¶¶ 5-10.)  Cooke reported her concerns to ConEd Human Resources ("HR") personnel in February and May 2018, and, in June 2018, ConEd assigned Cooke a new manager, Christopher Palladino.  (AC ¶¶ 8, 11, 13.)

In late 2021, Cooke again experienced "work environment stressors," this time "in the form of cyber bullying."  (AC ¶¶ 11, 14.)  On September 3, 2021, Cooke was

---

[1] The facts are derived from the Amended Complaint at Dkt. 87 ("AC").  In accordance with the standard for assessing a motion to dismiss for failure to state a claim, all non-conclusory facts in the AC are accepted as true, and all reasonable inferences are made in Plaintiff's favor.  *See Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024).  The Court also has considered the exhibits attached to the Amended Complaint.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint"); *accord Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013).

hospitalized.  (AC ¶ 63.)  While in the hospital, Cooke called ConEd's Sick Absence Automated Registration line daily, from September 8, 2021, to September 17, 2021.  (AC ¶ 64.)  During this time, ConEd's HR and Wellness Departments did not "instruct [Cooke] to take any additional action."  (AC ¶ 70.)  Cooke also spoke with a "wellness department and absence coordinator" from MetLife, her insurance provider through ConEd, who told Cooke that she (the MetLife employee) would personally "confirm [Cooke's] absence" with Cooke's manager.  (AC ¶ 66.)  After Cooke's discharge from the hospital, the hospital faxed a letter "for qualified medical absence" to ConEd's Wellness Department.  (AC ¶¶ 67-68.)  Cooke followed up with the MetLife liaison to confirm whether Cooke needed to take any further action regarding her absences; Cooke was told "nothing else was needed."  (AC ¶ 71.)

On November 1, 2021, Cooke informed her manager that "she was not feeling well and needed to sign off work," which her manager approved.  (AC ¶ 15.)  Cooke also called ConEd's Sick Absence Automated line to register her absence.  (AC ¶ 17.)  That same day, Cooke sought treatment from Dr. Mahmoud Kazmi, who diagnosed Cooke with anxiety. (AC ¶ 19.)  On November 4, 2021, Cooke attended an appointment at the ConEd Wellness Department and was subsequently declared "not fit for duty."  (AC ¶¶ 32-34.)  Cooke's absences, which she reported daily, continued for five more days.  (AC ¶ 35.)  On November 9, 2021, Cooke called MetLife regarding her absences.  The MetLife representative marked Cooke's absences under "short term disability" but told Cooke that she could change the designation to workers' compensation within 30 days.  (AC ¶ 36.)  A few weeks later, Cooke informed MetLife and the ConEd Wellness Department that her absences should be classified under workers' compensation, and on December 1, 2021,

she completed the necessary form with her manager.  (AC ¶¶ 39-41; *see also* AC ¶¶ 74-75.)

Dr. Kazmi submitted letters providing medical support for Cooke's ongoing absences, citing Cooke's inability to work due to illness between November 2021 and February 2022.  (AC ¶¶ 20-21, 42; *see also* AC ¶ 38.)  Another of Cooke's mental health providers, Debra H. Goldman, PhD, submitted letters to ConEd and MetLife providing support for Cooke's absences from January 10, 2022, to March 14, 2022.  (AC ¶¶ 22-23, 43.)  While out of the office, Cooke "communicated with MetLife regarding [her] absences," and MetLife approved them.  (AC ¶ 24.)  In January 2022, while Cooke's absence continued, her company laptop stopped working, and she did not regain access to it until she returned to the office in March.  (AC ¶ 27.)  On March 9, 2022, a few days before she returned to work, Cooke was diagnosed with anxiety, depression, and PTSD related to her work environment.  (AC ¶ 44.)  Cooke returned to work on March 15, 2022. (AC ¶ 26.)  After she returned to the office, Cooke was "accused of coding her time sheet to receive short term disability pay" between January and March 2022, which caused Cooke "extreme stress."  (AC ¶ 26.)

In April 2022, following remote work implemented during the COVID-19 pandemic, ConEd resumed a hybrid work schedule.  (AC ¶ 55.)  Cooke's work environment was "better" when she was allowed to work remotely.  (AC ¶¶ 54-55.)  From April 2022 to October 2022, other employees and contractors on Cooke's team were allowed to work remotely – however, Cooke was required to work in-office.  (AC ¶ 1.)  On July 28, 2022, Cooke submitted a request for accommodation to work remotely through at least October 2022 (after which Cooke's condition and required accommodations would be

4

reevaluated).    (AC ¶ 55.)    This request was supported by a letter provided by Dr. Goldman.  (AC ¶ 55.)

Cooke alleges that she did not receive any information about the status of her accommodation request in August, despite having sent an email inquiry to HR.  (AC ¶ 58.) But a completed Employee Interview summary dated the day of Cooke's termination (and which she attached as an exhibit to the Amended Complaint) states that on both August 1 and August 10, 2022, a ConEd HR representative reached out to Cooke to discuss her accommodations, but Cooke "failed to participate."  (AC at ECF 36).  Cooke was marked absent from work for the entire period between August 11, 2022, and September 9, 2022. (AC at ECF 36.)

Cooke met with the ConEd HR representative on September 16, 2022, to discuss her accommodation request to work remotely.  (AC ¶ 57.)  ConEd did not provide the accommodation "or any notification regarding the status" of the request.  (AC ¶¶ 59, 76.) Without remote accommodations, Cooke continued to report for work in person and "continued to suffer."  (AC ¶ 60.)

On December 2, 2022, Cooke met with representatives from ConEd who informed her that she was being discharged from the company due to excessive absenteeism and "failure to comply" with company policies.  (AC ¶ 104, ECF 36.)  ConEd told Cooke that she had failed to provide "required medical documentation" both in support of her accommodation request and to substantiate her absences.  (AC at ECF 36.)  ConEd also told Cooke that they had sent her letters on August 29, 2022, and September 29, 2022, notifying her that she "had failed to comply with company policy and that continued failure to comply would result in disciplinary action."  (AC at ECF 36.)  Cooke says that she never

5

received any warnings of (or opportunity to rectify) non-compliance with company policy, and she expressed "shock" at being terminated after years of service to the company.[2] (*See, e.g.*, AC ¶¶ 61, 72-73, 77-79, 82-83, 104.)

On July 31, 2023, Cooke filed a discrimination charge against ConEd with the Equal Employment Opportunity Commission ("EEOC"). (AC ¶¶ 93, 108.) She received a letter providing Notice of her Right to Sue from the EEOC on October 10, 2023. (AC ¶¶ 95, 109, ECF 72.)

### Procedural Background

Cooke filed her complaint against ConEd on January 2, 2024, in Bronx County Supreme Court. (Dkt. 3-1.) On January 25, 2024, ConEd removed the case to federal court. (Dkt. 3.) On February 22, 2024, the Court consolidated this matter with 23-CV-7330, another employment discrimination case brought by Cooke against ConEd, which involved substantially the same facts and issues. (Dkt. 9.) On April 30, 2024, on consent of the parties, the Court dismissed the related 23-CV-7330 action without prejudice. (Dkt. 65.)

On February 14, 2025, Cooke filed the operative Amended Complaint. (*See generally* AC.) The first several pages of the Amended Complaint are a form pleading. (AC at ECF 1-7.) In that form, Cooke checked boxes for the following claims: ADA (based

---

[2] The Amended Complaint asserts assorted other wrongs, including failure to inform Cooke of a payroll recovery for "worker's compensation absences" and subsequent failure "to reimburse [Cooke] for the over $13,000.00 unauthorized claw back salaries" (¶¶ 28-29), failure to approve substitution of earned vacation days for unpaid sick absences (¶ 30), failure to pay for all hours worked (¶ 84), and failure to provide requisite warning letters, benefits, and compensation information in connection with her termination (¶¶ 85-91, 101, 105-107, 119). As on noted below, the Court lacks jurisdiction to consider Cooke's workers' compensation claims. Cooke's allegations about the other items are vague and untethered to any of Cooke's stated causes of action, and the Court finds them insufficient to state a claim beyond those discussed herein.

on disability from PTSD, anxiety, and depression), FMLA, NYSHRL, NYCHRL, and a "other" claim, which Cooke described as arising under the "Pay Act" for the last two days she worked for ConEd. (*Id.* at ECF 4.) Cooke also checked boxes for adverse employment actions consisting of termination and failure to accommodate her disability. (*Id.* at ECF 5.) In additional pages attached to the form, Cooke alleges violation of the ADA, FMLA, NYSHRL, NYCHRL, but not the "Pay Act." (*Id.* at ECF 10.) Affording a liberal reading given Cooke's pro se status, the Court construes the Amended Complaint as primarily asserting claims for (1) disability discrimination based on disparate treatment and wrongful termination in violation of the ADA, NYSHRL, and NYCHRL; (2) failure to accommodate disability in violation of the ADA, NYSHRL, and NYCHRL; (3) violation of the FMLA; and (4) violation of the Equal Pay Act.

On May 7, 2025, ConEd filed the instant motion to dismiss as well as a supporting memorandum of law ("ConEd Mem."). (Dkts. 95-96.) ConEd seeks dismissal of the Amended Complaint in its entirety, but its memorandum addresses only Cooke's claims of discrimination under the ADA. ConEd argues that most of Cooke's claims are either barred or limited by the statute of limitations, and that the Amended Complaint fails to state a plausible claim for relief. On September 16, 2025, Cooke filed a response in opposition to ConEd's motion to dismiss ("Opp."). (Dkt. 107.) In her opposition, Cooke responds to ConEd's assertions, setting forth many of the factual allegations made in the Amended Complaint, but also adding new legal theories and causes of action – namely, (i) hostile work environment, (ii) unlawful retaliation for filing workers' compensation claims and her complaint with the EEOC, and (iii) violation of the Genetic Information

Nondiscrimination Act of 2008 ("GINA").  On November 21, 2025, ConEd filed a reply in support of its motion to dismiss ("ConEd Reply").[3]  (Dkt. 125.)

**Legal Standard**

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).  A claim is facially plausible when the factual content pled allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).  In considering a motion to dismiss, a district court "accept[s] all factual claims in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor."  *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks and citation omitted); *accord Tripathy*, 103 F.4th at 113.  However, this tenet is "inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "[R]ather, the complaint's

---

[3] In its reply, ConEd argued that Cooke's opposition exceeded the page limit (which it did) and attached 123 pages of extraneous documents that should be struck. (ConEd Reply at 8.)  Most of the documents attached to Cooke's opposition may not be considered by the Court on the instant motion because they were not attached to the complaint; incorporated into the complaint by reference; or integral to the complaint.  *See Kleinman*, 706 F.3d at 152.  As discussed below, the Court declines to strike those attachments but has not considered them in resolving the motion.

factual allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks, alterations, and citation omitted). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

For the purposes of considering a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman*, 706 F.3d at 152. In that regard, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Group Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012).

As Cooke is proceeding pro se, the Court affords a liberal construction to her allegations to raise the "strongest arguments that they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citations omitted). "Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory allegations. In other words, the duty to liberally construe a [pro se] plaintiff's complaint is not the equivalent of a duty to re-write it." *Cheng v. United States*, 725 F. Supp.3d 432,

437 (S.D.N.Y. 2024) (internal quotation marks and citations omitted), *aff'd*, 132 F.4th 655 (2d Cir. 2025).

## Discussion

ConEd advances two principal arguments in support of dismissal: that the majority of the Amended Complaint's claims are time-barred by the statute of limitations, and, in any event, the Amended Complaint fails to plead a plausible disability discrimination claim under either a failure-to-accommodate theory or an adverse-employment-action theory. (*See generally* Opp.)  *See also Gilani v. Deloitte LLP*, No. 23-CV-4755, 2024 WL 4042256, at *5 (S.D.N.Y. Sept. 4, 2024) ("Disability discrimination claims under the ADA 'may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation'") (quoting *Samuels v. City of New York*, No. 22-CV-1904, 2023 WL 5717892, at *6 (S.D.N.Y. Sept. 5, 2023)).  The Court first addresses both the timeliness and merits of the employment discrimination claims.  The Court then turns to Cooke's FMLA claim, other claims raised primarily in her opposition, secondary arguments raised by ConEd, and leave to amend.  Ultimately, the Court concludes that ConEd's motion to dismiss with respect to Cooke's ADA, NYSHRL, and NYCHRL claims should be denied. The remaining claims in Cooke's Amended Complaint should be dismissed with leave to amend.

## A.    Cooke's Disability Discrimination Claims Under The ADA

As noted above, ConEd's motion focuses on Cooke's claims under the ADA.  The Court begins with ConEd's statute of limitations argument and then addresses the merits.

10

### 1.     Statute of Limitations

ConEd argues that any of Cooke's ADA claims that accrued prior to October 4, 2022, or 300 days before July 31, 2023, when Cooke filed her complaint with the EEOC, should be dismissed as time barred.  ConEd is largely correct.

Before filing an employment discrimination claim, a "plaintiff must file charges with the EEOC."  *Gomez v. New York City Police Department*, 191 F. Supp.3d 293, 299 (S.D.N.Y. 2016); *see also* 42 U.S.C. §§ 2000e-5(e), 12117(a).  Generally, a plaintiff must file their charge with the EEOC within 180 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  However, "[i]n a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice," such as New York, the time period to file with the EEOC is extended: "an employee who initially files a grievance with that [state] agency must file the charge with the EEOC within 300 days."  *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S. Ct. 2061 (2002).  This time limit applies to employment discrimination claims under the ADA, as it does for other types of employment discrimination under Title VII.  *See Soules v. Connecticut, Department of Community Services & Public Protection*, 882 F.3d 52, 57 (2d Cir. 2018).

Here, the parties generally agree on the actionable time period.  ConEd argues that any claims brought by Cooke "that accrued prior to October 4, 2022 (or 300 days before July 31, 2023 [when Cooke filed her EEOC charge]) are time-barred and should be dismissed."  (ConEd Mem. at 7).  Though off by a few days, Cooke concedes in the Amended Complaint that the statute of limitations period for her claims of wrongful termination and failure to accommodate runs from September 30, 2022, until July 31,

11

2023. (AC ¶ 46.) Her claims thus are time-barred to the extent they arose in 2016, 2018, 2021, or any other time before October 4, 2022.

ConEd does not dispute that Cooke's termination on December 2, 2022, falls within the statute of limitations. (*See* ConEd Mem. at 7-8*.*) Cooke's claim that she was wrongfully terminated based on her disability is thus timely.

But ConEd does argue that Cooke's failure-to-accommodate claim is untimely because, ConEd says, it accrued before October 4, 2022. The Court does not agree. Although Cooke requested her accommodation for remote work on July 28, 2022, the Second Circuit has held "that the statute of limitations analysis in a failure to accommodate case should 'focus[] on the acts of the employer' rather than the 'effect on the employee.'" *Gomez*, 191 F. Supp.3d at 302 (quoting *Elmenayer v. ABF Freight System, Inc.*, 318 F.3d 130, 135 (2d Cir. 2003)). In *Morgan*, the Supreme Court unanimously held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. at 113. In failure to accommodate cases, the employer's denial of the requested accommodations constitutes a "discrete act." *Elmenayer*, 318 F.3d at 135; *see also Fleming v. Verizon New York, Inc.*, 419 F. Supp.2d 455, 466 (S.D.N.Y. 2005) (same).

Cooke alleges that ConEd "failed to provide … *any* notification regarding the status of the accommodation to work remotely from July 27, 2022 *through October 2022*." (AC ¶ 59 (emphases added).) Moreover, the July 27, 2022 letter from Dr. Goldman supporting Cooke's accommodation request recommended that Cooke "be allowed to work from home for the next three months," and noted that Cooke's re-evaluation "will be scheduled for October 27, 2022." (AC at ECF 48.) Cooke's request thus extended at least three

weeks into the statute of limitations period.  The Employee Interview summary that ConEd prepared from Cooke's termination meeting suggests that ConEd may have denied Cooke's accommodation request on or about September 16, 2022.  (*See* AC at ECF 36.) But, even aside from the lack of clarity in that regard, the Court may ***not*** accept the statements made by ConEd in the document for their truth.  *See Roth v. Jennings*, 489 F.3d 499, 511 (2d Cir. 2007) ("such documents may properly be considered only for 'what' they contain, 'not to prove the truth of their contents'").

With no basis to conclude on the instant motion that ConEd denied Cooke's request before October 4, 2022, the Court finds that her failure-to-accommodate claim, like her wrongful-termination claim, should not be dismissed as time-barred by the 300-day statute of limitations.

### 2.    Merits: Failure To Accommodate

ConEd argues that, even if the failure-to-accommodate claim is timely, it should be dismissed because Cooke's excessive absenteeism rendered her unable to perform essential job functions.

The ADA imposes liability on an employer that does "not make reasonable accommodations to the known physical or mental limitations of an otherwise qualified ... employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business."  *Romano v. A360 Media, LLC*, No. 20-CV-8988, 2023 WL 348459, at *9 (S.D.N.Y. Jan. 20, 2023) (citing 42 U.S.C. § 12112(b)(5)(A)) (internal quotation marks and alterations omitted).  To establish a prima facie case of discrimination based on an employer's failure to accommodate, the plaintiff must allege that:

13

(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006) (quoting *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004)).[4]

Cooke sufficiently alleges – and ConEd does not contest – the first, second, and fourth elements of a failure-to-accommodate claim. Cooke alleges she has PTSD, along with anxiety and depression. (*See, e.g.*, AC ¶¶ 51, 60.) PTSD is a recognized disability under the ADA. *See C.C. v. Google, LLC*, No. 24-CV-7811, 2025 WL 1938809, at *7-8 (S.D.N.Y. July 15, 2025) (collecting cases). "Depression and anxiety can constitute a disability under the ADA if it substantially limits a major life activity." *Dinome v. Cordis US Corp.*, No. 23-CV-11173, 2024 WL 3888799, at *9 (S.D.N.Y. Aug. 21, 2024) (citing *Reilly v. Revlon, Inc.*, 620 F. Supp.2d 524, 541 (S.D.N.Y. 2009)). For the second element, the Amended Complaint includes ample allegations that ConEd was on notice of Cooke's disability as of July 28, 2022, when Cooke filed her formal request for accommodation, at the latest, and as early as November 2021. (*See, e.g.,* AC ¶¶ 32-34 (Cooke declared "not fit for duty" by the ConEd Wellness Department in November 2021), 20-23 (describing letters from doctors to ConEd discussing Cooke's disabilities), ECF 38, 41 (completed Request for Accommodation form dated July 28, 2022).) The Amended Complaint also

---

[4] If a plaintiff demonstrates a prima facie case of discrimination, then "the burden shifts to the employer to show that it cannot reasonably accommodate the plaintiff without undue hardship." *Baker v. Bridge Inc.*, 805 F. Supp.3d 521, 544 (S.D.N.Y. 2025) (citing *McMillan v. City of New York*, 711 F.3d 120, 128 (2d Cir. 2013)). "Undue hardship" is defined as "requiring significant difficulty or expense" by an employer. 42 U.S.C. § 12111(10). On a motion to dismiss, however, a plaintiff need only allege facts to support their prima facie case.

alleges that ConEd did not grant her the accommodation she requested – to work remotely – or any other accommodation (*see* AC ¶¶ 57, 59), and that Cooke "continued to report for work in person and continued to suffer anxiety … and PTSD" due to "work environment stressors" until she was fired on December 2, 2022 (AC ¶ 60).

ConEd does, however, challenge the sufficiency of the third element – that Cooke could perform the essential duties of her job even with reasonable accommodations. ConEd also argues that Cooke "failed to participate" in the "interactive process" initiated by ConEd, and ConEd "did not receive adequate supporting medical documentation from Plaintiff to justify her request." (ConEd Mem. at 5.) *See Goonan v. Federal Reserve Bank of New York*, 916 F. Supp.2d 470, 479-80 (S.D.N.Y. 2013) (explaining that an employee's request for disability accommodations may require an "informal, interactive process" which should "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations") (quoting 29 C.F.R. § 1630.2(o)(3)). ConEd's arguments, however, impermissibly rely on accepting the truth of factual assertions made by ConEd, not Cooke, which the Court may not do on a motion to dismiss for failure to state a claim.

Reasonable accommodations may include, but are not limited to, adjustments such as "[j]ob restructuring" and "modified work schedules." 29 C.F.R. § 1630.2(o)(2). What "constitutes a reasonable accommodation is necessarily fact-specific," and must account for "not only [] the benefits of the accommodation but [] its costs." *Lewis v. Livingston County Center for Nursing & Rehabilitation*, 30 F. Supp.3d 196, 210 (W.D.N.Y. 2014). "[M]any courts have treated remote work like any other accommodation – potentially reasonable depending on the specific requirements of a job and the specific

15

facts of a case." *Wallace v. Wormuth*, No. 18-CV-6525, 2022 WL 993064, at *13 n.11 (S.D.N.Y. Mar. 31, 2022).

"A reasonable accommodation," however, "can never involve the elimination of an essential function of a job." *Shannon v. New York City Transit Authority*, 332 F.3d 95, 100 (2d Cir. 2003). Determining an essential function of a job requires a "penetrating factual analysis," and courts "must … conduct a fact-specific inquiry, drawing all inferences in favor of the non-moving party." *McMillan*, 711 F.3d at 126. While there are a "number of relevant factors that may influence a court's ultimate conclusion (such as employer's judgment, written job descriptions, etc.), 'no one listed factor will be dispositive.'" *Id.* (quoting *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997).

Although the Amended Complaint does not identify the essential functions of Cooke's job, it adequately alleges that remote work would be a reasonable accommodation for Cooke. Cooke says that her "work environment was better while working remotely" and that her "[w]ork performance [was] met with reasonable accommodation while working remotely … during COVID-19." (AC ¶¶ 52-54.) Additionally, other ConEd employees on Cooke's team were allowed to work remotely five days a week after ConEd resumed a hybrid work environment from April 2022 to October 2022. (AC ¶ 1.) Nothing in Cooke's Amended Complaint indicates that Cooke's duties required her to be physically present at her job site, and ConEd does not argue otherwise.

Instead, ConEd argues that Cooke could not perform the essential functions of her job because she was chronically absent. ConEd asserts that the "ADA does not require employers to tolerate chronic absenteeism even when attendance problems are caused

by an employee's disability." *Lewis v. New York City Police Department*, 908 F. Supp.2d 313, 327 (E.D.N.Y. 2012) (internal quotation marks omitted), *aff'd sub nom. Lewis v. NYC Police Department*, 537 F. App'x 11 (2d Cir. 2013) (summary order); *see also Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp.3d 551, 569 (S.D.N.Y. 2023) (citing cases for the proposition "chronic absenteeism can be a grounds for dismissal at a motion to dismiss"); *Pierce v. Highland Falls-Fort Montgomery Central School District*, No. 08-CV-1948, 2011 WL 4526520, at *5 (S.D.N.Y. Sept. 28, 2011) (holding that even considering his disability, plaintiff's "persistent absence from work, alone, precludes him from being considered qualified under the ADA"). But whether absenteeism prevents an employee from performing the essential functions of her job is context specific, not a universal proposition of law. In *McMillan*, the Second Circuit held that an employee's "presence at or by a specific time is not, as a matter of law, an essential function of all employment." 711 F.3d at 126.

Courts thus have declined to "dismiss plaintiff's claims solely on the general proposition that employer attendance expectations constitute essential job functions, especially given the Second Circuit's guidance to the contrary." *Crosby*, 695 F. Supp.3d at 570. Moreover, "excessive absenteeism may not defeat a prima facie case in a disability discrimination case where the employee's absence is the result of the employer's failure to provide a reasonable accommodation." *Nakis v. Potter*, No. 01-CV-10047, 2004 WL 2903718, at *18 (S.D.N.Y. Dec. 15, 2004) (citing *Lyons v. Legal Aid Society*, 68 F.3d 1512, 1516 (2d Cir. 1995)); *see also Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) ("plaintiff has presented sufficient evidence from which a jury could find that her failure to return to work and eventual discharge was a foreseeable and intended result

17

of the company's action in refusing" her accommodation request) (internal quotation marks omitted); *Morris v. City of New York*, 153 F. Supp.2d 494, 502 (S.D.N.Y. 2001) ("Where the employer was aware that an employee's absences were related to a disability, however, the employee's attendance record may be an impermissible pretext for the employee's disability").

ConEd points to the number of Cooke's unexcused absences to argue that Cooke could not perform essential functions of her role, even if allowed to work remotely. ConEd emphasizes that a significant number of Cooke's allegedly unexcused absences occurred while ConEd was on a remote schedule and "before [Cooke] requested reasonable accommodation to work remotely." (ConEd Mem. at 11 (calculating 52 of 73 unexcused absences during remote operation).) Thus, ConEd argues, Cooke's accommodation request is "entirely unrelated to the bulk of [Cooke's] absenteeism." (ConEd Mem. at 11.)

In support of its absenteeism argument – as well as its assertions that Cooke failed to provide documentation and participate in the interactive process – ConEd relies on its Employee Interview summary. (ConEd Mem. at 4-6, 9-11 (citing AC at ECF 36).) But as discussed above, the Court may not accept the statements made by ConEd in the document for their truth. *Roth*, 489 F.3d at 511. Moreover, the Amended Complaint and its incorporated exhibits dispute several of ConEd's assertions, including those that rely primarily on the Employee Interview summary. For example, Cooke alleges that she ***did*** provide supporting documentation for her accommodation request, and that ConEd did not fulfill ***its*** obligations with respect to the interactive process. (AC ¶¶ 55, 58-59.) Cooke also states that her medical providers sent medical documentation in support of her absences to ConEd and MetLife, and that MetLife approved those absences (AC ¶¶ 20-

18

24). In short, Cooke contests the truth and accuracy of the information in the Employee Interview summary, and Cooke's allegations must be accepted as true for present purposes.

The Amended Complaint also references and attaches multiple letters sent from Cooke's medical providers to ConEd that she contends were submitted to justify her absences. (*See, e.g.*, AC at ECF 55 (stating, based on 11/1/2021 medical visit, that Cooke was "unable to work" until 11/15/2021), 37 (stating, based on 12/10/2021 medical visit, that Cooke was "unable to work" from 11/1/2021 to 1/10/2022), 52 (stating, based on 1/7/2022 medical visit, that Cooke was "unable to work" from 1/7/2022 to 2/3/2022), 49 (stating, as of 1/31/2022, that Cooke's "symptoms have not resolved" and asking to extend Cooke's leave to 3/7/2022).) The Employee Interview summary identifies some, but not all, of the aforementioned absence periods as unexcused (namely 1/10/2022 through 3/14/2022), with no explanation for why the letters were apparently sufficient in some cases, and not sufficient in others.

In reply, ConEd argues that Cooke's claims should be deemed abandoned because she did "not dispute her excessive absences" in her opposition. (ConEd Reply at 7.) However, "the question of abandonment is one of intent," and Cooke has provided no indication that she "opted to sacrifice" her claims. *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155-56 (2d Cir. 1998); *see also Bannister v. Luis*, No. 18-CV-7285, 2022 WL 19402511, at *2 (E.D.N.Y. Oct. 27, 2022) ("where the silent party is pro se, abandonment is only generally granted where an intention has been expressed to abandon the claim") (subsequent history omitted). To the contrary, her opposition defends them. Given that the Amended Complaint includes allegations that are at odds with ConEd's assertions

19

based on the Employee Interview summary, the Court does not find it significant that Cooke did not directly address the number of absences that ConEd says were unexcused.

The Court finds that Cooke has plausibly pled a prima facie case of disability discrimination under the ADA for failure to accommodate. ConEd's motion to dismiss Cooke's failure-to-accommodate claim should be denied.

### 3.    Merits:  Adverse Employment Action

The elements for a claim of disability discrimination based on an adverse employment action are similar to those for a failure-to-accommodate claim, with one exception: the plaintiff must show that she "suffered adverse employment action because of [her] disability."  *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) (per curiam). Accordingly, a plaintiff must satisfy the following elements: "(1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of [her] disability." *Id.*

Cooke plausibly alleges an adverse employment action, claiming that she was "[w]rongful[ly] terminat[ed] based on unresolved disabilities" on December 2, 2022. (AC ¶ 48, ECF 5.)  And, as discussed above, Cooke has plausibly pled the other elements of her claim.  Accordingly, ConEd's motion to dismiss Cooke's ADA discrimination claim grounded in an adverse employment action should be denied.[5]

---

[5] In opposition, Cooke newly refers to physical conditions, such as asthma and spinal injuries, associated with absences and accommodation requests.  Those allegations are not sufficiently formed to state a claim.  Further, the only disability alleged in the Amended

**B.      Disability Discrimination Claims Under The NYSHRL And NYCHRL**

Cooke also brought disability discrimination claims under the NYSHRL and NYCHRL.  Disability discrimination claims under the NYSHRL are "governed by the same [burden-shifting framework] as … federal ADA claims," *Tafolla*, 80 F.4th at 119 (quoting *Graves*, 457 F.3d at 184 n.3), but are afforded a more liberal construction than if asserted under federal law.  *See Arazi v. Cohen Brothers Realty Corp.*, No. 20-CV-8837, 2022 WL 912940, at *7 (S.D.N.Y. Mar. 28, 2022) (explaining that in 2019 "the New York legislature amended the NYSHRL … to establish that its provisions should be construed liberally even if federal civil rights laws … have been construed narrowly") (internal quotation marks omitted); *Wellner v. Montefiore Medical Center*, No. 17-CV-3479, 2019 WL 4081898, at *5 n.4. (S.D.N.Y. Aug. 29, 2019) (stating that the effect of the 2019 amendments has been to "render the standard for [NYSHRL] claims closer to the standard under the NYCHRL").

The NYCHRL has an even more forgiving standard.  *See Vangas v. Montefiore Medical Center*, 6 F. Supp.3d 400, 416 (S.D.N.Y. 2014) ("NYCHRL provides broader protection than the [ADA] and the NYSHR").  To bring a disability discrimination claim under the NYCHRL, a plaintiff "need only show that her employer treated her less well, at least in part for a discriminatory reason." *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp.3d 99, 123 (S.D.N.Y. 2020) (internal quotation marks omitted).  The Court must "construe the provisions of the NYCHRL 'broadly in favor of discrimination plaintiffs, to the

---

Complaint is PTSD, accompanied by anxiety and depression.  As discussed below, such "allegations go well beyond merely elaborating on the facts alleged in the Complaint," and do not merit the Court's consideration.  *See Mira v. Argus Media*, No. 15-CV-9990, 2017 WL 1184302, at *3 (S.D.N.Y. Mar. 29, 2017).

extent that such a construction is reasonably possible.'"  *Baluch v. 300 West 22 Realty, LLC*, No. 21-CV-9747, 2023 WL 112547, at *5 (S.D.N.Y. Jan. 5, 2023) (quoting *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)).

Because, as discussed above, Cooke has stated plausible disability discrimination claims for failure to accommodate and adverse employment action under the ADA, she "necessarily also states a claim under the NYSHRL and NYCHRL, which are 'at least as protective' as the ADA."  *C.C.*, 2025 WL 1938809, at *9 (quoting *Dixon v. City of New York*, No. 23-CV-8941, 2025 WL 50140, at *12 (S.D.N.Y. Jan. 7, 2025)); *see also Berger v. New York City Police Department*, 304 F. Supp.3d 360, 372 (S.D.N.Y. 2018) (same).  Accordingly, ConEd's motion should be denied with respect to Cooke's claims asserted under the NYSHRL and NYCHRL as well.

## C.    The FMLA Claim

The Amended Complaint, by a checked box, purports to assert a claim under the FMLA.  (AC at ECF 4.)  Its allegations, however, do not state a plausible claim for relief under that statute.

The FMLA entitles employees to up to twelve weeks of leave to, inter alia, take care of a family member or "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1); *see Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 165-66 (2d Cir. 2017) (stating that FMLA "provides broad protections to employees who need to take time away from work to deal with serious health conditions of the employee or her family").  It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."  *Haran v. Orange Business Services, Inc.*, 160 F.4th 51, 56 (2d Cir. 2025) (quoting 29 U.S.C.

§ 2615(a)(1)).  "FMLA claims come in at least two varieties: interference and retaliation." *Id.* (quoting *Woods*, 864 F.3d at 166).

To bring an interference claim under the FMLA, "a plaintiff must establish: (1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that she was entitled to take leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Institute of America*, 817 F.3d 415, 424 (2d Cir. 2016).  To bring an FMLA retaliation claim, a plaintiff must allege that "(1) [she] exercised rights protected under the FMLA, (2) [she] was qualified for [her] position, (3) [she] suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Donnelly v. Greenburgh Central School District No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (internal quotation marks omitted).

"The threshold question for both claims 'is whether an employee is eligible under the statute to claim its protections.'"  *Harris v. New York City Human Resources Administration*, No. 20-CV-2011, 2022 WL 3100663, at *19 (S.D.N.Y. Aug. 4, 2022) (quoting *Arroyo-Horne v. City of New York*, 831 F. App'x 536, 539 (2d Cir. 2020) (summary order)).  To be eligible for benefits under the FMLA at all, an employee must have worked at the organization for at least a year, and for at least "1250 hours in the twelve months prior to the beginning of his or her medical leave." *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 715 (2d Cir. 2001); *see also* 29 U.S.C. § 2611(2)(A). While Cooke alleges that she worked for ConEd for over a year (*e.g.,* AC ¶ 3), she does not allege that she worked at least 1,250 hours in the twelve months prior to requesting

23

leave.  (*See generally* AC.)  That alone requires dismissal of her FMLA claim.  *See Arroyo-Horne*, 831 F. App'x at 539 (affirming dismissal of an FMLA claim when the plaintiff failed to allege "that she had worked 1,250 hours in the 12-month period prior to her requests for FMLA leave").  Nor does Cooke allege that she applied for or gave notice of her intent to take medical leave under the FMLA, or that she was denied leave under the FMLA.  Rather she complains that she was denied accommodation to work remotely and was terminated based on her disability.  (*See, e.g.*, AC ¶¶ 1, 45, 50-51, 52-57, 59, 76.)

To be sure, there is a hint of an FMLA claim in Cooke's pleadings.  She alleges that a doctor's letter "for qualified medical absence" was sent from the hospital to ConEd shortly after a nine-day hospitalization in fall of 2021.  (AC ¶ 67; *see also id.* ¶ 74 (alleging that "[m]edical letters for qualified medical condition were provided for all absences").)  The Amended Complaint contains many allegations of absences and supporting letters from medical professionals.  (*E.g.*, AC ¶¶ 20-23, 64, 68, 74.)  But still, Cooke has not sufficiently pled facts to show that she was eligible for FMLA leave, that she even sought or was denied FMLA leave, or that there was any causal link between her termination and exercise of her rights under the FMLA.  Accordingly, "having failed to adequately allege nearly every element under the FMLA," *Harris*, 2022 WL 3100663, at *19 (S.D.N.Y. Aug. 4, 2022), Cooke's FMLA claim should be dismissed.

### D.    Cooke's Additional Claims

Cooke's opposition raises several claims that either are not alleged as a cause of action or are invoked in the Amended Complaint but without supporting allegations.  They are: (1) violation of the Genetic Information Nondiscrimination Act,  (2) violation of the Equal Pay Act, (3) discrimination based on hostile work environment, and (4) retaliation for filing EEOC inquiries and workers' compensation claims.

24

ConEd argues that "it is well settled that Plaintiff may not amend her complaint via papers in opposition to a motion to dismiss." (ConEd Reply at 5.) However, while "[a] pro se plaintiff may not raise 'entirely new' causes of action for the first time in his opposition papers, … the Court may consider new claims appearing for the first time in briefing if 'the claims could have been asserted based on the facts alleged in the complaint.'" *Davila v. Lang*, 343 F. Supp.3d 254, 267 (S.D.N.Y. 2018) (quoting *Vlad-Berindan v. MTA New York City Transit*, No. 14-CV-675, 2014 WL 6982929, at *5 (S.D.N.Y. 2014). Because Cooke "articulates additional claims that h[er] original complaint could have been construed to allege," the Court will consider the claims. *Lang v. New York City Health & Hospitals Corp.*, No. 12-CV-5523, 2013 WL 4774751, at *4 (S.D.N.Y. Sept. 5, 2013). While the Court analyzes all four of Cooke's additional claims, it finds that none are sufficiently stated to survive dismissal.

### 1. Genetic Information Nondiscrimination Act ("GINA")

"GINA makes it unlawful for an employer to discharge or otherwise discriminate against an employee based on genetic information or testing." *Powell v. Lab Corporation*, 789 F. App'x 237, 240 (2d Cir. 2019) (citing 42 U.S.C. § 2000ff-1(a)(1)) (summary order). GINA defines genetic information as "(1) an employee's genetic tests; (2) the genetic tests of the employee's family members; or (3) the manifestation of a disease or disorder in the employee's family members." *Grimes-Jenkins v. Consolidated Edison Co. of New York, Inc.*, No. 16-CV-4897, 2017 WL 2258374, at *10 (S.D.N.Y. May 22, 2017) (citing 42 U.S.C. § 2000ff(4)), *R&R adopted*, 2017 WL 2709747 (S.D.N.Y. June 22, 2017). To establish a claim under GINA, a plaintiff must show "(1) that she was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of information from Plaintiff's genetic tests." *Allen v. Verizon Wireless*, No. 3:12-CV-482, 2013 WL 2467923,

at *23 (D. Conn. June 6, 2013) (internal quotation marks and citation omitted). "Before filing a lawsuit under … GINA, a plaintiff is generally required to exhaust the administrative remedies provided by the statutes." *Karupaiyan v. Experis US Inc.*, No. 21-CV-4675, 2024 WL 1119476, at *3 (S.D.N.Y. Mar. 14, 2024), *aff'd*, No. 24-580, 2025 WL 615179 (2d Cir. Feb. 26, 2025).

The only references to GINA found in the Amended Complaint are in attachments; namely, Cooke's initial complaint filed in state court, and some form EEOC language. (AC at ECF 8-9, 68, 72-73.) While Cooke also invokes GINA in her opposition (Opp. at 8), neither the Amended Complaint nor Cooke's opposition assert any factual allegations even tangentially related to genetic testing or information. Nor does Cooke allege that she exhausted the administrative remedies required by statute (i.e., that she raised GINA issues to the EEOC). The Court thus finds that Cooke has not plausibly pled a violation of GINA.

### 2.    Equal Pay Act

"To establish a *prima facie* case of pay discrimination under the EPA, a plaintiff must show that '(i) the employer pays different wages to employees ***of the opposite sex***; (ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (iii) the jobs are performed under similar working conditions.'" *Fischman v. Mitsubishi Chemical Holdings America, Inc.*, No. 18-CV-8188, 2023 WL 4763257, at *8 (S.D.N.Y. July 26, 2023) (quoting *Lavin-McEleney v. Marist College*, 239 F.3d 476, 480 (2d Cir. 2001)) (emphasis added). "[A] plausible EPA claim must include 'sufficient factual matter, accepted as true' to permit 'the reasonable inference' that the

relevant employees' job content was 'substantially equal.'"[6]  *E.E.O.C. v. Port Authority of New York & New Jersey*, 768 F.3d 247, 256 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

The only allegations in the Amended Complaint about Cooke's pay are that (1) her pay "was reduced, unbeknownst to" her  (AC at ECF 4), and (2) she did not receive pay for the last two days she worked (AC at ECF 4 and ¶ 84).  Even read in the most generous light, the Amended Complaint alleges no facts suggesting that Cooke's pay was withheld or reduced such that she was paid any differently than her male peers.   Cooke's opposition asserts in impermissibly conclusory fashion that there was "[u]nequal pay for unequal titles" (Opp. at 6), but even that does not allege any differential pay based on gender.  The Amended Complaint fails to state an EPA claim.

### 3.    Hostile Work Environment

Other than a passing reference in an exhibit, the Amended Complaint does not purport to assert a cause of action for hostile work environment.[7]   The Amended Complaint does, however, include allegations about Cooke's difficult work environment and her being subjected to workplace bullying.  Cooke directly asserts a hostile work

---

[6] An employer can counter a prima facie claim under the Equal Pay Act by showing that the wage disparity results from "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."  *See* 29 U.S.C. § 206(d)(1).  A plaintiff can overcome the employer's defense "by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination."  *Flaherty v. Massapequa Public Schools*, 752 F. Supp.2d 286, 299 (E.D.N.Y. 2010) (internal quotation marks omitted).

[7] In an "Initial Psychological Evaluation," Cooke's mental health provider, Dr. Goldman, noted that Cooke "reports that her work environment is hostile and has created significant psychological distress preventing her from effectively functioning" at work.  (AC at ECF 53.)  In the Statement of Claim section of the Amended Complaint, however, Cooke did not check the box for alleging that she experienced hostile work environment.  (AC at 5.)

environment claim in her opposition.  (*See* Opp. at 6-7.)  Even so, her claim is barred by the statute of limitations and otherwise insufficient to withstand dismissal.

"[C]laims for hostile work environment are actionable under the ADA."  *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019).  To bring a hostile work environment claim, plaintiffs must show that their workplace is "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of his or her employment were thereby altered."  *Agosto v. New York City Department of Education*, 982 F.3d 86, 101 (2d Cir. 2020) (quoting *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013)).  "[T]he misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive."  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted).  Additionally, "the plaintiff must show that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). To determine whether a plaintiff has met their burden, courts look to factors such as "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance."  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367 (1993).

Cooke's allegations that could even come close to implicating a hostile work environment of any kind are barred by the statute of limitations.  The Amended Complaint alleges that in 2016, Cooke's manager, Michael Gibbons, "compared plaintiff's work with another employee in a negative light and undermined [her] work publicly in a team

28

meeting." (AC ¶ 5.) Gibbons also "discontinue[d] her attendance to Con Edison mentorship programs" and her "participation in [the] annual awards program." (AC ¶ 6.) Two years later in 2018, Gibbons prevented Cooke from showcasing and listing all her accomplishments in an annual performance review. (AC ¶ 8.) Three years later in 2021, Cooke experienced unspecified cyberbullying. (AC ¶ 14.) As explained above, the 300-day cutoff for the statute of limitations was October 4, 2022. Yet none of the alleged discrete events of hostility are alleged to have occurred after that date.

And, even if one or more such incidents did fall within the limitations period, the events pre-dating that period would not be kept alive by the continuing violation doctrine. "Under … [the] continuing violation doctrine, 'if a plaintiff has experienced a continuous practice and policy of discrimination, ... the commencement of the [300-day] statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)). It is not enough for a plaintiff to allege "separate instances of alleged unlawful conduct." *Jackson v. New York State*, 523 F. App'x 67, 69 (2d Cir. 2013) (summary order). "Allegations involving 'different co-workers and supervisors, in different time periods, and [in] different [departments]' do not constitute a single hostile work environment." *Kocar v. Port Authority of New York & New Jersey*, No. 19-CV-11508, 2022 WL 624070, at *5 (S.D.N.Y. Mar. 2, 2022) (quoting *Little v. National Broadcasting Co., Inc.*, 210 F. Supp.2d 330, 368 (S.D.N.Y. 2002)). Additionally, "courts may deem incidents and episodes unrelated where they are separated by intervening action by the employer," such as "acting on the basis of a plaintiff's complaint, or transferring a plaintiff to a different department." *Id.* (citing *McGullam v. Cedar*

29

*Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010)).  Rather, for federal and state law purposes, the plaintiff must show that there was "a common policy under which all the actions were carried out."  *Id.*; *see also Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022) (explaining that the continuing violation doctrine applies only to "claims composed of a series of separate acts that collectively constitute one unlawful practice").  *Cf. Dimitracopoulos v. City of New York*, 26 F. Supp.3d 200, 212 (E.D.N.Y. 2014) ("New York courts have held that the pre-*Morgan*, more generous continuing violations doctrine continues to apply to discrete acts of employment discrimination under NYCHRL").

The events Cooke alleges are spread out episodically over years of employment, and do not support a common practice or policy.  Additionally, Cooke's allegations are primarily tied to the actions of her former supervisor, Gibbons.  (AC ¶¶ 5-10, 13.)  Gibbons was replaced by Christopher Palladino as Cooke's supervisor in June 2018, after Cooke spoke with HR about her concerns in May 2018.  (AC ¶¶ 11-13.)  Given that ConEd took "intervening action" when it removed Gibbons as Cooke's supervisor, *Armstrong v. Metropolitan Transportation Authority*, No. 07-CV-3561, 2015 WL 992737, at *4 (S.D.N.Y. Mar. 3, 2015), Cooke cannot invoke the continuing violation doctrine to save hostile work environment allegations that occurred before October 4, 2022.[8]

---

[8] While Cooke does allege "**continued** … work environment stressors in the form of cyberbullying," she specifies a targeted time frame as "[o]n or around [November 1, 2021]" that still falls outside the statute of limitations.  (AC ¶ 14 (emphasis added).)  Moreover, her allegations lack the "necessary 'factual content' to support a reasonable inference that she suffered from a[] [disability-based] hostile work environment."  *Wallace v. Esper*, No. 18-CV-6525, 2019 WL 4805813, at *10 (S.D.N.Y. Sept. 30, 2019) (quoting *Iqbal*, 129 S. Ct. at 1949).  Other than invoking the term "cyberbullying," neither the Amended Complaint nor Cooke's opposition assert any facts about what that entailed or to raise an inference of discriminatory animus.  The allegations thus do not state a plausible claim for relief.  *See id.*; *Salerno v. Town of Bedford, New York*, No. 05-CV-7293, 2008 WL

In any event, given the absence of hostile work environment allegations post-dating October 4, 2022, the Amended Complaint fails to state a claim that is not barred by the statute of limitations.

### 4.        Retaliation Claim

The Amended Complaint makes a brief reference to "retaliation discrimination of 'wrongful termination.'" (AC ¶ 108.)  Cooke expands on that reference in her opposition, where she asserts that she "suffered retaliation within the purview of the ADA" after filing EEOC complaints and workers' compensation claims.  (Opp. at 36; *see also id*. at 7 ("Plaintiff was retaliated against for filing workers' compensation claims").)

As a threshold matter, the Court lacks subject matter jurisdiction to consider Cooke's claim that ConEd retaliated against her for filing workers' compensation claims. "The New York Workers' Compensation Law provides the 'exclusive remedy' for employees seeking to recover compensation for work-related injuries …. The Workers' Compensation Law likewise provides the exclusive remedy for an employee's claim that his employer discriminated or retaliated against him for filing, or attempting to file, a workers' compensation claim." *De la Cruz v. City of New York*, 783 F. Supp.2d 622, 646 (S.D.N.Y. 2011) (citing N.Y. Workers' Comp. Law §§ 29(6), 120); *see also Ridgway v. Metropolitan Museum of Art*, No. 06-CV-5055, 2007 WL 1098737, at *5-6 (S.D.N.Y. Apr. 9, 2007) (finding court lacked jurisdiction to hear plaintiff's claim that his employer retaliated against him because he sought workers' compensation).  Accordingly, the Court considers Cooke's retaliation claim only in connection with her filing EEOC complaints.

---

5101185, at *8 (S.D.N.Y. Dec. 3, 2008) (finding that allegations of "excessive reprimands are insufficient to establish a hostile environment claim").

31

The ADA prohibits retaliation "against any individual because such individual ... made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a).  To bring a successful retaliation claim under the ADA, a plaintiff must show "(1) that she engaged in protected participation or opposition under [the ADA], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (internal citation omitted).  "To adequately plead causation under the retaliation provisions of … the ADA, the plaintiff must plausibly allege that the retaliation was a but-for cause of the employer's adverse action." *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp.3d 68, 100 (S.D.N.Y. 2024) (internal quotation marks omitted).  Importantly, "'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 846 (2d Cir. 2013).  A plaintiff can show causation "by direct evidence of retaliatory animus or … through temporal proximity to the protected activity." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018).

"[F]iling … a complaint with the EEOC is an activity protected by the ADA." *Lovejoy-Wilson*, 263 F.3d at 223 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)).  In her opposition, Cooke asserts that she "was retaliated against for filing EEOC inquiries." (Opp. at 7.)  Cooke mentions multiple EEOC complaints filed before she was terminated, including: (1) an EEOC complaint dated

32

September 3, 2021, with a right-to-sue letter issued on December 15, 2021; (2) an EEOC complaint dated March 28, 2022; (3) and "several [inquiries] thereafter" culminating in an EEOC complaint filed on July 27, 2022, with a right-to-sue letter issued on February 2, 2023. (Opp. at 13-14.)

**None** of those EEOC complaints, however, were included or referenced in the Amended Complaint – whereas the Amended Complaint did expressly include allegations about, and attached as an exhibit, the EEOC complaint that Cooke filed after she was terminated. As such, the Court declines to consider the retaliation claim as it relates to the EEOC complaints that were raised for the first time in Cooke's opposition. *See Mira*, 2017 WL 1184302, at *3 ("Because [pro se plaintiff's] new allegations go well beyond merely elaborating on the facts alleged in the Complaint and apparently are intended to support new legal theories, the Court declines to consider them here"). Cooke nonetheless may include such allegations in a second amended complaint.

### E.    ConEd's Other Arguments

ConEd advances other arguments that merit brief discussion.

First, ConEd argues that Cooke's opposition greatly exceeds the page and word limits prescribed by Local Civil Rule 7.1(c).[9] (ConEd Reply at 8.) ConEd is correct. Cooke's opposition is 46 pages long, attaches over 200 pages of exhibits, and does not include a certification attesting to its word count. ConEd proposes that the Court disregard Cooke's opposition but allow Cooke to refile a revised version in compliance

---

[9] Local Rule 7.1(c) states that "[i]f filed by a party who is not represented by an attorney and handwritten or prepared with a typewriter, briefs in support of and in response to a motion may not exceed 25 pages, and reply briefs may not exceed 10 pages," and if prepared with a computer, "briefs in support of and in response to a motion (except for motions for reconsideration) may not exceed 8,750 words, and reply briefs may not exceed 3,500 words."

with the Local Rule.  (ConEd Reply at 8.)  The Court declines to require Cooke to do so. Apart from the attached exhibits, Cooke's opposition appears to be triple-line spaced and, in several places, quadruple-line spaced, with ample margins.  While the Court has not counted the number of words,[10] the Court has discretion to consider an extended filing and has done so here.  That said, Cooke is forewarned that any future submissions must comply with Local Rule 7.1 – or other applicable rules – and that failure to comply may result in the non-compliant filing being struck or disregarded in whole or in part.  *See P&G Auditors & Consultants, LLC v. Mega International Commercial Bank Co.*, No. 18-CV-9232, 2019 WL 4805862, at *4 (S.D.N.Y. Sept. 30, 2019) (acknowledging it is "within the Court's discretion … to strike the overlength pages of [a] brief for exceeding the court's length requirements"); *Bletas v. Deluca*, No. 11-CV-1777, 2011 WL 13130878, at *1 (S.D.N.Y. Dec. 16, 2011) (noting pro se motion struck for failure to comply with Local Rules, court's individual practices governing the length of filings, and court order); *see also Laboy v. Ontario County*, 56 F. Supp.3d 255, 259 (W.D.N.Y. 2014) ("A district court has discretion in deciding whether to strike a submission not in compliance with a local rule").

Second, and related to the length of Cooke's opposition, ConEd contests the propriety of 123 pages of "extraneous" material attached to Cooke's opposition.  (ConEd Reply at 8-9.)  ConEd is correct that on a motion to dismiss, evidentiary submissions are not appropriate.  *See Faiveley Transport USA, Inc. v. Wabtec Corp.*, 758 F. Supp.2d 211, 216 (S.D.N.Y. 2010) ("the Court generally cannot consider affidavits and exhibits on a

---

[10] On reply, ConEd asserts that Cooke's opposition brief is "nearly 10,000 words long." (ConEd Reply at 8.)

motion to dismiss") (citing *Roth*, 489 F.3d at 509).  As noted at the outset, however, the Court may appropriately consider documents that are incorporated by reference or integral to the complaint.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  To be sure, much of the material attached to Cooke's opposition does not qualify for consideration at this juncture, and the Court has not done so.  In the event Cooke files a second amended complaint and ConEd files a motion to dismiss, Cooke should abide by the limits on submitting exhibits in opposition.

## F.    Leave to Amend

Although some portions of Cooke's claims are barred by the statute of limitations, others are not.  And, with respect to those that are not, the Court cannot conclude that any amendment would be futile.  Accordingly, as a pro se plaintiff, Cooke should be afforded at least one opportunity to amend following the Court's ruling.  *See Elder v. McCarthy*, 967 F.3d 113, 132 (2d Cir. 2020) ("Where a district court cannot rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim, a pro se complaint should not be dismissed without granting leave to amend at least once") (internal quotation marks omitted).  If Cooke chooses to file a second amended complaint, she must take into account the Court's findings above, including with respect to those matters that are time-barred.  Any amended pleading must be limited to facts and claims that can be asserted in good faith.  And as noted above, any amended complaint must comply with the Local Rules.

## Conclusion

For the reasons set forth above, ConEd's motion to dismiss should be DENIED with respect to Cooke's disability-based failure to accommodate and adverse employment claims under the ADA, NYSHRL, and NYCHRL.  ConEd's motion should be GRANTED

35

as to Cooke's remaining claims, which should be dismissed with leave to replead.  To the extent not discussed above, the Court has considered the parties' arguments and found them to be either moot or without merit.

### Procedure For Filing Objections

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Any party shall have fourteen (14) days to file a written response to the other party's objections.  Any such objections and responses shall be filed with the Clerk of Court, with courtesy copies delivered to the Chambers of the Honorable Paul A. Engelmayer, United States Courthouse, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any request for an extension of time for filing objections must be addressed to Judge Engelmayer.  **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review**

RESPECTFULLY SUBMITTED,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:  February 27, 2026
       New York, New York

The Court respectfully requests the Clerk of Court to mail a copy of this Report & Recommendation to the pro se Plaintiff:

Charmaine Cooke
834 Penfield Street, #4H
Bronx, NY 10470

36